**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Krystal Kovrig,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-00324-TUC-RM

**ORDER**

Plaintiff Krystal Kovrig seeks judicial review of a decision by the Commissioner of the Social Security Administration denying her application for supplemental security income. On July 22, 2026, Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R&R"), recommending that the Court reverse the Commissioner's decision and remand this matter to the agency for a new hearing and decision. (Doc. 20.) The Commissioner filed an objection (Doc. 21), to which Plaintiff responded (Doc. 22).

**I. Standard of Review**

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734,

739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of R&R).

## II. Background

Plaintiff filed an application for supplemental security income alleging disability based on numerous conditions including fibromyalgia, degeneration of the lower back, migraines, diabetes, posttraumatic stress disorder, bipolar disorder, anxiety, and depression. (AR 285, 304.) Plaintiff's medical records reflect regular treatment for chronic pain and mental health issues during the relevant period. In her function report and her testimony before the Administrative Law Judge ("ALJ"), Plaintiff reported that she is in constant pain, cannot do basic household chores, cannot drive, needs help to shower and dress, and does not go out except for doctor's appointments. (AR 42-46, 320-325.) She stated that she does about 30 minutes of physical therapy exercises every 2-3 days, and she estimated that she can walk for about 10 minutes, sit for about 30 minutes, and lift 5 pounds. (AR 43, 45.)

The ALJ found that Plaintiff has the following severe impairments: fibromyalgia, degenerative disc disease, obesity, diabetes, headaches, major depressive disorder, bipolar disorder, personality disorder, and posttraumatic stress disorder. (AR 18.) The ALJ found that Plaintiff has the residual functional capacity to perform light work with certain physical and mental limitations and with only occasional interaction with the public, coworkers, and supervisors. (AR 20-21.) The ALJ then found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and residual functional capacity, and that Plaintiff is therefore not disabled. (AR 29-30.)

In formulating Plaintiff's residual functional capacity, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and effects

of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 22.) After summarizing portions of Plaintiff's medical records, the ALJ found as follows:

> Although the claimant estimated that she can walk for only about 10 minutes, sit for only about 30 minutes and lift about 5 pounds, Dr. Palmer found no atrophy in any extremities. Dr. Drake also charted normal strength in all extremities. Claimant routinely reported having no limitation in activities of daily living or instrumental activities of daily living, which include ability to self care, manage medications, prepare meals, use communication devices, pay bills, run errands, for example. Claimant testified that her pain on average was 8/10 even with medication however her providers observed her to be in no acute distress during her appointments. As well, claimant reported with medication management, her mood was stable and she was able to manage her symptoms.

(AR 26 (internal record citations omitted).)

The R&R addresses each reason provided by the ALJ for discounting Plaintiff's symptom allegations, and concludes that none is clear and convincing. (Doc. 20 at 4-8.) First, with respect to the ALJ's conclusion that Plaintiff's estimation of her physical abilities was inconsistent with findings of normal strength and no atrophy, the R&R finds that the ALJ erroneously discounted "Plaintiff's testimony based on the very lack of objective evidence that is characteristic" of fibromyalgia. (*Id.* at 5.) Second, the R&R finds that the ALJ failed to explain why Plaintiff's activities of daily living were inconsistent with her symptom statements. (*Id.* at 6-7.) Third, the R&R finds that Plaintiff's complaints of severe pain were not inherently inconsistent with medical providers' observations of "no acute distress." (*Id.* at 7-8.) The R&R rejects the Commissioner's remaining arguments as post hoc rationalizations, and finds that the ALJ's failure to provide clear and convincing reasons for discounting Plaintiff's testimony was not harmless error. (*Id.* at 8-9.)

The Commissioner argues in the Objection that the ALJ properly discounted Plaintiff's symptom allegations based on: (1) providers' observations of Plaintiff's lack of distress and other inconsistencies with the objective medical evidence; (2) Plaintiff's improvement with treatment; and (3) Plaintiff's routine reports of no limitations in

activities of daily living. (Doc. 21.)

## III. Discussion

The Court must affirm the Commissioner's decision if "the ALJ's ruling is free of legal error and its findings of fact are supported by substantial evidence." *Wischmann v. Kijakazi*, 68 F.4th 498, 504 (9th Cir. 2023). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (internal quotation marks omitted).

If a claimant presents "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal quotation marks omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).

An ALJ "may use inconsistent objective medical evidence in the record to discount subjective symptom testimony," but the ALJ cannot "discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged." *Id.* at 1200 (internal quotation marks omitted). A claimant is not required to "produce objective medical evidence" of her pain "or the severity thereof," *Garrison*, 759 F.3d at 1014 (internal quotation marks omitted), and an ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony," *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (internal quotation and alteration marks omitted).

. . . .

**A. Normal Strength and Lack of Atrophy in Extremities**

The Commissioner does not object to the R&R's conclusion that the ALJ erred in discounting Plaintiff's estimation of her physical abilities based on findings of normal strength and lack of atrophy. The Court agrees with the R&R that findings of normal strength and no atrophy are not inconsistent with Plaintiff's reports of pain and physical limitations from fibromyalgia.[1] *See Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) (finding ALJ erred in rejecting claimant's testimony concerning symptoms of fibromyalgia based on medical records documenting normal muscle strength and tone).

**B. Lack of Acute Distress**

The Commissioner argues that the ALJ properly discounted Plaintiff's symptom allegations based on providers' observations of a lack of distress. (Doc. 21 at 2-3.)

The Court recognizes that there is some disagreement among district courts within the Ninth Circuit regarding whether an ALJ may properly discount a claimant's subjective complaints of pain from chronic conditions based on "no acute distress" notations in the claimant's medical records. *See, e.g., Hernandez v. Comm'r of Soc. Sec.*, No. 1:22-cv-00188-CDB, 2024 WL 3470855, at *5-6 (E.D. Cal. July 18, 2024). However, the Court agrees with the R&R that brief, generic notations of "no acute distress," without more, do "not constitute an objective medical finding that is inconsistent with severe fibromyalgia." *Reinertson v. Barnhart*, 127 F. App'x 285, 290 n.2 (9th Cir. 2005). Acute distress is "of recent or sudden onset," whereas pain from fibromyalgia is chronic. *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019). "One who suffers from fibromyalgia, a condition marked by chronic pain throughout the body, is not necessarily in acute distress." *Reinertson*, 127 F. App'x at 290 n.2 (internal quotation omitted). Furthermore, Plaintiff's medical records frequently distinguish "acute distress" from displays of discomfort, indicating that a notation of "no acute distress" is not equivalent to a finding that a patient displayed no signs of pain. (*See, e.g.*, AR 422,

[1] The Court also notes that the ALJ disregarded without explanation other findings of weakness, reduced muscle tone, and reduced sensation. (*See, e.g.*, AR 913-914, 1158-1159, 1196).

429, 441, 447, 454, 461, 467, 473, 479, 485, 491, 510.) The records reflect observations of minimal to moderate display of discomfort. (*See id.*)

The Court will adopt the R&R's finding that the ALJ erred in discounting Plaintiff's symptom allegations based on notations in her medical records of "no acute distress."

**C. Other Inconsistencies with Medical Evidence**

The Commissioner argues that the ALJ discussed further inconsistencies between Plaintiff's subjective pain complaints and the objective evidence, including that Nurse Practitioner ("NP") Alan June once observed normal upper extremity movement, that NP June thought on one occasion that Plaintiff looked to be in less pain despite reporting worse pain, and that Plaintiff's allegations of pain contributing to psychological distress conflicted with findings of normal blood pressure and heart rate readings. (Doc. 21 at 3.)

If an ALJ discounts a claimant's subjective symptom testimony based on inconsistencies with the objective medical evidence, the ALJ must "explain why the medical evidence is inconsistent with the claimant's" testimony. *Ferguson*, 95 F.th at 1200 (emphasis omitted). Summarizing the medical evidence "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original).

Here, the ALJ found that Plaintiff's blood pressure and heart rate readings were inconsistent with Plaintiff's reports of agoraphobia. (AR 25.) But the ALJ did not specifically find that the readings were inconsistent with Plaintiff's reports of pain, nor did the ALJ provide any specific, clear, and convincing reasons explaining why the readings were inconsistent with Plaintiff's complaints of pain.

In summarizing Plaintiff's medical records, the ALJ noted that Plaintiff complained to NP June that she was unable to move her arms but that NP June "observed normal movement of the upper extremities unbeknownst" to Plaintiff. (AR 23.) The ALJ also observed that during one visit, NP June thought Plaintiff appeared to be in less pain even though she reported trigger point injections had made her feel worse. (*Id.*) But the ALJ did not provide any specific, clear, and convincing reasons as to why these observations by

NP June are inconsistent with Plaintiff's allegations of severe pain and significant functional limitations. Furthermore, the Commissioner cherry picks from the ALJ's summary of the medical records. For example, in addition to summarizing NP June's observation of normal upper extremity movement, the ALJ also summarized findings by other providers that Plaintiff had reduced strength in her upper extremities, reduced sensation and grip in her hands and forearms, and limited range of motion. (AR 23-24, 27.)

The Court agrees with the R&R that the Commissioner's arguments are post hoc rationalizations involving inconsistencies that the ALJ never clearly articulated as reasons for rejecting Plaintiff's subjective pain allegations. (*See* Doc. 20 at 9.)

**D. Improvement with Treatment**

The Commissioner argues that the ALJ found, with judicially reviewable reasoning, that Plaintiff's pain allegations were undermined by her improvement with treatment. (Doc. 21 at 4-5.) The ALJ found that: "claimant reported with medication management, her mood was stable and she was able to manage her symptoms." (AR 26.) The R&R interprets this statement as finding that Plaintiff's mental health symptoms were controlled with medication; the R&R concludes that the ALJ never indicated Plaintiff's pain was controlled by medication. (Doc. 20 at 9.)

The Court agrees with the R&R that the ALJ's finding related to Plaintiff's mental health symptoms improving with medication. The ALJ did not clearly find that Plaintiff's pain symptoms were controlled by medication. To the extent the ALJ did so find, the finding is not supported by substantial evidence in the record. Plaintiff reported varying levels of pain relief from treatment, with no significant relief from NSAIDs or injections, and anywhere from 20 to 90% relief from opioid medication. (*See, e.g.*, AR 419, 438, 507, 645, 851, 869, 903, 910, 1148, 1032, 1039, 1152, 1155, 1163, 1170, 117, 1184, 1190.) Notwithstanding this fluctuating relief from opioids, Plaintiff regularly reported severe average pain despite her consistent treatment and medication. (*See, e.g.*, AR 420, 568, 645, 851, 869, 903, 910, 1032, 1039, 1155, 1163, 1170, 1177, 1184.) Substantial evidence in

the record does not support a finding that Plaintiff's pain symptoms were well controlled with treatment.

**E. Activities of Daily Living**

The Commissioner argues that the ALJ properly found Plaintiff's symptom allegations inconsistent with her reports to medical providers of no limitations in activities of daily living. (Doc. 21 at 5-6.) Plaintiff's psychiatric treatment records from the Marana Health Center routinely note, without elaboration: "No problems with ADLs or IADLs." (*See, e.g.*, AR 1300, 1327, 1363, 1387, 1408, 1497, 1507, 1519, 1553, 1585.) The Commissioner argues that the Court need only conduct a quick Internet search to discern the meaning of the acronyms "ADLs" and "IADLs" and thereby to find the annotations inconsistent with Plaintiff's symptom allegations. (Doc. 21 at 6.)

Neither the ADL/IADL examples provided by the ALJ nor the online definitions cited by the Commissioner appear in the record. Plaintiff's Marana Health Center records do not define the acronyms ADLs or IADLs, and the record does not contain any indication of which activities Plaintiff's providers were referring to when noting no problems with ADLs or IADLs. Furthermore, Plaintiff reported that her "ADLs [were] mostly limited due to her physical health issues" (AR 808), and it is unclear whether the generic notations in Plaintiff's psychiatric treatment records reflect Plaintiff reporting no problems with her ADLs generally or no problems with her ADLs stemming from mental health symptoms.

In addition, although Plaintiff's psychiatric records contain generic notations of no problems with ADLs or IADLs, they also frequently note that Plaintiff presented with a disheveled appearance, indicating that Plaintiff was struggling with hygiene and self-care. (*See, e.g.*, AR 1521, 1554, 1586.) The records also reflect that Plaintiff frequently complained of poor energy and concentration, difficulty sleeping, significant depression and anxiety, intrusive thoughts, and needing to live with her mother due to an inability to support herself. (*See, e.g.*, AR 1327, 1363-64, 1387, 1496-1497, 1507.)

Without clarity concerning the activities referenced in the generic notations regarding ADLs and IADLs in Plaintiff's psychiatric records, nor any explanation of how

the notations contradicted any specific aspect of Plaintiff's testimony, the ALJ's reference to the ADL/IADL notations does not constitute a clear and convincing reason for discounting Plaintiff's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (ALJ may not rely on a "general finding" that a claimant's activities "were inconsistent in some unspecified way with her testimony").

**F. Harmless Error Review**

The R&R finds that the ALJ's failure to provide clear and convincing reasons for discounting Plaintiff's testimony was not harmless error because Plaintiff's testimony, if credited, was inconsistent with the ALJ's residual functional capacity assessment and indicated Plaintiff would be off task more than 5% of the workday, which the vocational expert testified would preclude all work. (Doc. 20 at 9-10.) The Commissioner does not object to the R&R's harmless error analysis, and the Court agrees with the R&R that remanding for further agency proceedings is appropriate.

Accordingly,

**IT IS ORDERED** that the Commissioner's Objection (Doc. 21) is **overruled**, and Magistrate Judge Aguilera's Report and Recommendation (Doc. 20) is **accepted and adopted in full**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **reversed**, and this matter is **remanded** to the agency for a new hearing and decision. The Clerk of Court is directed to enter judgment in favor of Plaintiff and close this case.

Dated this 25th day of August, 2026.

Honorable Rosemary Márquez
United States District Judge